IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT NJOS,                          :       CIVIL ACTION NO. **12-1375**
                                     :
            Plaintiff                :       (Judge Kosik)
                                     :
            v.                       :       (Magistrate Judge Blewitt)
                                     :
CARNEY, *et al.*,                    :
                                     :
            Defendants               :

**REPORT AND RECOMMENDATION**

**I. Background**.

*Pro se* prisoner Plaintiff, Scott Njos, currently incarcerated at United States

Penitentiary-Lewisburg ("USP-Lewisburg"), filed another *Bivens*[1] civil rights action on July 17,

2012, brought pursuant to 28 U.S.C. § 1331, and the Religious Freedom Restoration Act

("RFRA"), 42 U.S.C. §2000bb-1(a).[2]  (Doc. 1). Plaintiff generally alleges the denial of his First

_____

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct.
1999 (1971).  Plaintiff's action  falls within 28 U.S.C. § 1331 ("The district courts shall have
original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the
United States." (Emphasis added).
        As Plaintiff indicates, this is a *Bivens* action since he seeks monetary damages from
federal officials for alleged violations of his constitutional rights. *See Oriakhi v. Wood*, 2006 WL
859543, * 1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009 WL 1956282 (M.D. Pa.).  Plaintiff also
indicates that he is in the Special Management Unit ("SMU") at USP-Lewisburg.  (Doc. 1, p. 1).


[2]We note that Plaintiff has previously filed another *Bivens* action, namely, *Scott Njos v.
J.L. Norwood, et al.,* with the Eastern District of California. Further, Plaintiff's previous petition
for writ of habeas corpus, under §2241,  in the Middle District of Pennsylvania was dismissed
for lack of jurisdiction by the District Court on June 4, 2012. *See* Civil No.  12-0243, M.D. Pa.
Between May 21 and August 1, 2012, Plaintiff also has filed four civil rights cases in the Middle

1

Amendment rights to freely exercise his religion, excessive punishment for self-removal from

his Kosher diet, and withholding by prison officials of access to religious programs, services,

and benefits in violation of the  RFRA.[3]  (Doc. 1, p. 1).  Plaintiff's Complaint is a six (6) page

handwritten pleading with one attached Exhibit, namely, a copy of his BOP Kosher-for-

Passover Meal Request Form for Passover during April 2012, which was approved by the

prison chaplain on December 15, 2011.  (Doc. 1, p. 7).  On July 17, 2012, Plaintiff also filed

a   three (3) page handwritten Memorandum in support of his Complaint.  (Doc. 2).

Additionally, Plaintiff filed a Motion for Leave to Proceed *In Forma Pauperis* and an

authorization allowing the prison to submit a copy of Plaintiff's inmate account fund to the

court.  (Docs. 5 & 6).  In his "Exaustion of Remedys" (sic) section of his Complaint, Plaintiff

states that he has filed a BOP administrative request regarding his claims and appeals,

---

District of Pennsylvania, namely, 12-1038, 12-1251, 12-1252, and 12-1375 (the instant case). In case 12-1038, Plaintiff alleges excessive use of force. In cases 12-1251 and 12-1252, Plaintiff alleges a variation of deliberate indifference to medical needs.  In the present case,  12-1375, Plaintiff  alleges that he has not been provided with Kosher meals and has not been able to properly observe the Sabbath.

[3]The Supreme Court found that the RFRA was unconstitutional as to state and local governments in City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157 (1997).  The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc, a successor law to RFRA, was enacted by Congress in 2000 to replace the RFRA. The RLUIPA has been found to be constitutional and the provisions of the RLUIP are very similar to the provisions of the RFRA. *Cutter v. Wilkinson*, 544 U.S. 709 (2005); *Williams v. Bitner*, 285 F.Supp.2d 593 (M.D. Pa. 2003); Norwood v. Strada, 249 Fed.Appx. 269, 271-72 (3d Cir. 2007).  However, the RLUIPA "only applies to state and local governments, not a federal prison." *Rogers v. U.S.*, 696 F.Supp.2d 472, 486 (W.D. Pa. 2010)(citations omitted).   Claims under RFRA "remain viable" against the federal government.  *Id*. at 486 n. 8(citations omitted).  Thus, since Plaintiff Njos is a federal inmate, he can raise claims under the RFRA. *Id*. at 486.  To the extent Plaintiff is deemed as rasing claims under the RLUIPA (Doc. 2, p. 1), they should be dismissed. *Id*.

namely, Forms under  BP-8, BP-9, and BP-10, and that his request and appeals were

denied.  Plaintiff also indicates that he filed a final appeal of his administrative request with

the BOP General Counsel under BP-11, which according to Plaintiff has not been answered

for four months.  (Doc. 1, p. 4).    "Appeal to the BOP General Counsel [under BP-11] is the

final administrative appeal." 28 C.F.R. §542.15(a).  Notwithstanding the admitted failure of

Plaintiff to have fully exhausted his final BP-11 appeal with the Central Office, Plaintiff

concludes that he has exhausted his BOP administrative remedies "per program policy."[4]

(*Id.*).

Plaintiff names, as Defendants, Carney, Onua, and Davis, each of whom is a chaplain

in the  SMU at USP-Lewisburg.  Plaintiff also names as Defendants USP-Lewisburg Warden

Brian Bledsoe, Bureau of Prisons ("BOP") Regional Director John Norwood, and Thomas

---

[4]Thus, Plaintiff indicates in his Complaint that he filed a grievance with the BOP regarding his  instant claims and that complete exhaustion of his administrative remedies is not required since his final appeal went unanswered for four (4) months. As Plaintiff is now well-aware, he must exhaust all of his available BOP administrative remedies with respect to each of his claims prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*   However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Further, the BOP General Counsel shall respond to the inmate's final appeal within forty (40) calendar days.  28 C.F.R. §542.18.  If the inmate does not receive a response within the time provided for a reply, he may consider the lack of a response as a denial at that level.  *Id.* *See also Lacy-Thompson v. Martinez*, 2009 WL 4823875, *2 (M.D. Pa. Dec. 14, 2009).

3

Kane, Director of the BOP.  (Doc. 1, p. 1).  Plaintiff states that he has named the three (3)

BOP supervisory Defendants, namely, Bledsoe, Norwood and Kane, merely because they

are supervisors with respect to the responses of the BOP staff to his administrative remedy

request and appeals, and since they read his administrative remedy request and appeals.

(*Id.*, pp. 1, 5-6). In the caption of his Complaint, Plaintiff states that Defendants are sued in

both their official and individual capacities.[5]  (*Id.*, p. 1).

## II. Allegations of Complaint.

Plaintiff requests, in part, that the Court issue a declaratory judgment finding that his

past punishment of being taken off of the religious diet Kosher meals for purchasing, in

December 2010, a non-Kosher beef sausage by BOP officials was excessive.  (Doc. 1, p. 6).

Plaintiff also requests that the Court issue a declaratory judgment and find he has a right to

receive a Kosher religious diet and, a right to receive weekly on the Sabbath three separate

containers of juice and matzos.   (*Id*.).  Plaintiff also requests that the Court issue an

injunction ordering all Defendants to provide him with a Kosher religious diet as well as

provide him with three different containers of juice/wine and matzo for weekly Sabbath.

(Doc. 1, p. 6).  Plaintiff also requests that the Court award compensatory damages in the

amount of $5,550 against all Defendants, for 555 days at $10.00 per day. (*Id*.).  Plaintiff

---

[5]In a *Bivens* suit, Plaintiff cannot sue the individual  federal Defendants for damages in their official capacities. *See Smith v. U.S.*, 2007 WL 7313360, *6, n. 13 (M.D. Pa.)(citation omitted).  Thus, insofar as Plaintiff is deemed as seeking damages against the Defendants in their official capacities, we will recommend that such claims be dismissed with prejudice.  In light of well-settled case law on this issue, we find it would be futile to allow Plaintiff to amend his claims for damages against Defendants in their official capacities.

further requests punitive damages in the amount of $11,100, against all Defendants, for 555 days of Kosher meal deprivation at a rate of $20.00 per day.  (*Id.*).

The crux of Plaintiff's claim is that prison officials have placed substantial and unreasonable burdens on his ability to freely exercise his religion.[6]  We proceed to address Plaintiff's claims in chronological order.

Plaintiff notes that, due to health reasons, he previously temporarily withdrew from the Kosher diet while incarcerated at USP-Victorville (CA).  (Doc. 1, p. 2). As Plaintiff states in his Complaint, the alleged actions giving rise to his claims at USP-Lewisburg apparently accrued beginning in December of 2010.  The impetus for Plaintiff's current claims appears to stem from Plaintiff's purchase of beef sausage, not certified as Kosher, from the prison commissary in December of 2010.[7]  (Doc. 1, p. 2).  Plaintiff further contends that "Chaplin

_____

[6]Plaintiff briefly mentions alleged deprivation of Kosher meals while he was confined at USP-Victorville (CA), where prison officials apparently retaliated against him for his self-requested removal from the Kosher diet. In the instant case, we will solely consider Plaintiff's alleged claims which accrued during the course of his incarceration at USP-Lewisburg, as officials at USP-Lewisburg would not have had any involvement with alleged deprivations at USP-Victorville and venue with respect to any claims arising at USP-Victorville does not lie in the Middle District of PA.

[7]We note that the dates cited in Plaintiff's Complaint (Doc. 1, p. 3) create some uncertainty as to the exact period of Plaintiff's exclusion from the Kosher diet. Plaintiff states "in December 2010 Chaplin Carney used two self-requested removals from the religous (sic) diet because of medical concerns to severely (sic) punish Plaintiff to 1-year denial of access to Kosher meals." Plaintiff, though, continues by noting that "in January 2011 Plaintiff's 1-year punishment was over, he requested to be placed back onto the religous (sic) diet, was retested by Chaplin Onua and denied to participate in the Kosher meals." According to Plaintiff, he thus experienced only one month punishment of exclusion from the Kosher diet, *i.e.* from December 2010 through January 2011.  However, based on Plaintiff  other allegations, it appears that Plaintiffs reference to January 2011 is a mere typographical error and that Plaintiff meant January 2012.  (Id., ¶'s 15 & 23).

5

Carney used two self requested removals from the religious diet because of medical concerns to severelly (sic) punish Plaintiff to 1-year denial of access to Kosher meals." (*Id.*). Plaintiff claims that his punishment for buying a non-Kosher beef sausage, *i.e.* one year of exclusion from the Kosher diet, constitutes staff retaliation against him as the one-year exclusion is a substantially more severe penalty than that meted out to other inmates for a similar behavior of not fully observing the Kosher requirements.  Plaintiff notes that other inmates received temporary suspensions from the Kosher diet ranging from 30-90 days, as opposed to Plaintiff's one-year exclusion.  (Doc. 1, p. 2).  Plaintiff states that the prison chaplains told him he received a more severe punishment than other inmates for his non-Kosher dietary infraction since he previously requested, due to medical reasons, to be removed from the Kosher meal religious diet because prison staff refused to give him an alternative food to fish.  Plaintiff indicates that he was allergic to fish.   Plaintiff avers that after his 1-year punishment was over, seemingly in January 2012, he re-tested to see if he was eligible for the Kosher meal diet and provided the same answers he gave in his three prior tests which he passed, but he was told by Defendant Onua  he failed to meet USP-Lewisburg's requirements and that since he was in the SMU, he was held to  more strict standards. (*Id.*).  Plaintiff states that Defendants violated his rights under the First Amendment and RFRA by imposing a stricter 1-year punishment on him for his first violation instead of the 30 to 90 days punishment other inmates received for violating their Kosher meal diets.

6

Plaintiff further states that Chaplains Carney, Davis and Onua consistently questioned the sincerity of his commitment to his Jewish faith, based in part on his unique practice of blessing food not certified as Kosher.[8]  Plaintiff also alleges that the three Defendant prison Chaplains, Carney, Davis and Onua,  informed him that "he could not receive literature on the Muslim religon (sic) if he did not change his religous (sic) status to such religon (sic), so he did in a (sic) attempt to investigate and research the differences and similarytys (sic) in the Jewish and Muslim faith." (*Id.,* p. 3).  Plaintiff states that, in order to receive materials pertaining to Islam during his one-year punishment from Kosher meals, he was placed with a Muslim cell-mate and observed the Ramadan fasting period in August 2011.  (Doc. 1, p. 3). Plaintiff avers that  Defendant prison Chaplains Carney, Davis and Onua used his so-called investigation of the Muslim faith as a further reason to find that he was not sincere enough in his Jewish faith when he re-tested for the Kosher diet.  (*Id.*).

As mentioned, Plaintiff includes with his Complaint documentation indicating he was approved for special Kosher meals for the Passover period in April 2012, date-stamped 12/15/2011 by the Prison Religious Services Chaplain.[9]  (Doc. 1, p. 7).  Plaintiff also states that he was approved to participate in the 26 Kosher meals for Passover, for the 2012 Passover period which lasts from April 6, 2012 to April 14, 2012, and also that he was

---

[8]Though Plaintiff does not explicitly state why he believes he has been subjected to allegedly adverse treatment, he acknowledges accepting non-Kosher food and subsequently blessing it. Plaintiff states "as long as the food is not contaminated by pork products it can be made Kosher by praying God bless it in a restricted environment." (Doc. 1, pp. 3 & 5).

[9]The approval of Plaintiff's "Kosher-for-Passover Meal Request" in December of 2011 (Doc. 1, p. 7) indicates that Plaintiff's exclusion from the Kosher diet expired at this point.

approved to receive special provisions to observe the Sabbath each Friday. Plaintiff avers, though, that he is not currently being provided with the required amount of juice and matzo to properly observe the Sabbath and that this violates his rights under the First Amendment and RFRA.  (Doc. 1, pp. 2-3).  Thus, Plaintiff states that Defendants violated his rights under the First Amendment and RFRA by denying his request for a Kosher meal diet despite the approval by the prison chaplains of his requests to receive  Passover meals and to receive the Sabbath meals.

Finally, Plaintiff essentially appears to allege that he is being exposed to an unreasonable "test" by Defendant Chaplains who, Plaintiff argues, seek to gauge the sincerity of his dedication to Judaism by "judging Plaintiff's sincerity in his chosen religon (sic) with a 'scale' and weighing what his sincerity was worth."  (Doc. 1, p. 5).  Plaintiff alleges that Defendants violated  his First Amendment rights and his rights under RFRA since they refuse to accommodate his own, unique religious beliefs.

We now screen Plaintiff's Complaint under the PLRA as we are required to do.

**III.  PLRA.**

As stated, the Plaintiff has filed an application to proceed  *in forma pauperis* pursuant to  28 U.S.C. § 1915.  (Doc. 5). The Prison Litigation Reform Act of 1995,[10] (the "Act"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

---

[10]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

**IV. Motion to Dismiss Standard**.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a complaint to be

dismissed, in whole or in part, for failure to state a claim upon which relief can be granted.

In considering whether a pleading states an actionable claim, the court must accept all

material allegations of the Complaint as true, construe the complaint liberally and make

reasonable inferences in the light most favorable to the Plaintiff. *Scheuer v. Rhodes*, 416

U.S. 232, 236 (1974). Dismissal of the complaint is appropriate if Plaintiff has not pled

enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 547 (2007), or alleged facts sufficient to raise a right to relief that

rises above mere speculation. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d

Cir. 2007).

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the

Court stated:

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to 'state a claim that relief is plausible on its face.' "
> *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court
> emphasized that "only a complaint that states a plausible claim for relief survives
> a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining
> whether a complaint states a plausible claim for relief will ... be a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Banks v. County of Allegheny*, 568 F.Supp.2d 588-589.

After reviewing the Complaint under 28 U.S.C. §1915(e)(2)(B), we have determined that the Plaintiff is unable to maintain his action with respect to his constitutional and RFRA claims against Supervisory Defendants Bledsoe, Norwood and Kane.  We also find that Plaintiff has provided sufficient preliminary factual content to allege claims against

Defendants Carney, Onua, and Davis.

## V.  Discussion.

We first find that Plaintiff's requests for  specific amount of monetary damages, both compensatory and punitive,  stemming from the alleged 555 days of deprivation of Kosher meal services should be stricken.  (Doc. 1, p. 6). Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages of should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure.

Additionally, as stated, Plaintiff  requests, in part, a Declaratory Judgment  that the Court find Defendants' past conduct and punishment, namely, their removal of him from the Kosher religious diet for purchasing, in December 2010, a non-Kosher beef sausage, was excessive. (Doc. 1, p. 6).  Plaintiff also requests that the Court issue a Declaratory Judgment and find that he has a right to receive a Kosher religious diet and, a right to receive weekly on the Sabbath three separate containers of juice and matzos.   (*Id*.).

In *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Third Circuit Court stated:

> To satisfy the standing and "case or controversy" requirements of Article III, a party seeking a declaratory judgment "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir.2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Here, Blakeney seeks a declaration merely that defendants' "acts" and "policies" violate the United States and Pennsylvania Constitutions. He does not allege that he will be subjected to that alleged conduct in the future. **Moreover, even if defendants violated**

11

> **Blakeney's rights in the past as he alleges, he is not entitled to a
> declaration to that effect.** *See Brown v. Fauver,* 819 F.2d 395, 399-400
> (3d Cir.1987) (directing District Court to dismiss prisoner's Section 1983
> claim for prospective relief where appellant "has done nothing more
> than allege past exposure to unconstitutional state action").

(Emphasis added).

Plaintiff Njos is, in part, seeking declaratory relief alleging that he will be subjected to

continuing denial of a Kosher religious diet and certain food and drink amounts weekly  on

the Sabbath in the future by Defendants in violation of his constitutional rights.  We find

that Plaintiff should be allowed to proceed with this portion of his request for declaratory

judgment.   However, with respect to Plaintiff's stated request for declaratory relief seeking

this Court to declare the alleged past conduct of Defendants violated his constitutional

rights (Doc. 1, p. 6, ¶ A. 1.), namely, Plaintiff's removal of a Kosher diet for his December

2010 purchase of non-Kosher food, we find that Plaintiff lacks standing to request a

declaratory judgment regarding alleged past exposure to unconstitutional actions by

Defendants.  *See Blakeney, supra.*

Therefore, we will recommend that Plaintiff's request for declaratory relief seeking this

Court to declare the alleged past conduct of Defendants violated his constitutional rights

(Doc. 1, p. 6,     ¶ A. 1.) be dismissed from this case with prejudice. *See Blakeney, supra.*

Based on the above discussion, we find futility of allowing Plaintiff to amend his Complaint

with respect to his stated request for declaratory relief.  *See Alston v. Parker*, 363 F.3d 229,

235-236 (3d Cir. 2004).

A. *Lack of Personal Involvement of three BOP Supervisory Defendants*

It is well established that personal liability in a civil rights action cannot be imposed upon a prison official based on a theory of *respondeat superior.  See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003); *Carpenter v. Kloptoski*, 2011 WL 995967, *6 (M.D. Pa. 3-17-11). We find, as we did with respect to Plaintiff's recent Complaints in cases 12-1251 and 12-1252, M.D. Pa., that Plaintiff's Complaint lacks sufficient allegations of personal involvement under a *Bivens* civil rights action as against the three named BOP Supervisory Defendants, namely, Defendants Bledsoe, Kane and Norwood. As stated, Plaintiff alleges  involvement of the Supervisory Defendants based merely on their rejection and reading of his administrative remedy appeals.[11]

In *O'Connell v. Sobina*, 2008 WL 144199, * 21 (W.D. Pa.), the Court stated:

> Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions.  *Rode*, 845 F.2d at 1207.  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.  See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  Moreover, to maintain a claim for supervisory liability, a plaintiff must show: 1) that the supervising official personally participated in the activity; 2) that the

---

[11]We note that this Plaintiff, in each of his previous *Bivens* actions, has named, as Defendants, the highest ranking officials at USP-Lewisburg and regional officials with the BOP who merely denied his administrative remedy appeals and who were only named as Defendants based on *respondeat superior*.  We have consistently recommended in Plaintiff's other cases pending before this Court that such individuals in supervisory positions be dismissed with prejudice.

supervising official directed others to violate a person's rights; or
3) that the supervising official had knowledge of and acquiesced in
a subordinate's violations. *See Robinson v. City of Pittsburgh*,
120 F.3d 1286, 1293 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d
1186, 1190-91 (3d Cir. 1995).

Moreover, it is well-established that inmates do not have a constitutionally protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *See also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure).  It is further well-settled that officials' handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005).  *See also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010).

Plaintiff acknowledges that the only specific allegations against Supervisory Defendants Bledsoe, Norwood and Kane stem from their reading and denying Plaintiff's administrative remedy appeals.  (Doc. 1, p. 1 & pp. 5-6).  Plaintiff does not allege that any of the Supervisory Defendants denied any of his Kosher meal requests, limited his ability to freely practice his Jewish religion, or imposed any other barriers to Plaintiff's receipt of available religious offerings; in fact, their only contact with Plaintiff was simply to deny his administrative remedy appeals. As Plaintiff cannot allege liability of Supervisory Defendants Bledsoe, Norwood and Kane solely based upon their handling of his grievance appeals, we will recommend that each of these Defendants be dismissed from the case with prejudice.

14

We next address whether Plaintiff should have leave to amend his pleading. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002). Thus, if a Complaint is subject to dismissal for failure to state a claim, the Court must first allow Plaintiff leave to amend unless it finds bad faith, undue delay, prejudice, or futility. *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Based upon the above, we again find that it would be futile to allow Plaintiff to amend his Complaint against Defendants USP-Lewisburg Warden Bledsoe, BOP Northeast Regional Director Norwood, and BOP Director Kane to allege their specific personal involvement with respect to his constitutional claim and RFRA claim.

B. *Plaintiff's First Amendment and RFRA claims against Prison Chaplains Carney, Davis and Onua*

We now proceed to address Plaintiff's  First Amendment and RFRA claims against  the Prison Chaplain Defendants Carney, Davis and Onua. In regard to Plaintiff's First Amendment  claim, the Court in *Branch v. Russian*,  2005 WL 1137879, * 7 (M.D. Pa.), stated:

> Individuals have a constitutionally protected right to follow the religious teachings and practices of their choice. *Employment Div. v. Smith*, 494 U.S. 872, 881-83, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). This right may be limited by law of general applicability, restricting both religious and non-religious conduct, but reasonable accommodations for religious observance may be required in certain circumstances. *Id.; see also Wisconsin v. Yoder*, 406 U.S. 205, 214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Particularly in the prison context, where inmates are precluded from engaging in a variety of otherwise permissible activities, officials may be

15

required to provide exemptions from restrictions that place a
"substantial burden" on an inmate's adherence to "sincerely held
religious beliefs," unless the officials offer compelling reasons for
refusing such accommodation.  *See* 42 U.S.C. § 2000cc-1(a);
*see also Smith*, 494 U.S. at 884; *Turner*, 482 U.S. at 89-91.

Plaintiff also correctly cites, as partial authority for his claims, the Religious Freedom

Restoration Act, 42 U.S.C.A. §2000bb-1(a), which states that Government "shall not

substantially burden a person's exercise of religion even if the burden results from a rule of

general applicability."  *See Rogers*, 696 F.Supp.2d at 486.  As stated, since Plaintiff is a

federal inmate his claim is under the RFRA, and not the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA").  *Id*.

In *Rogers*, 696 F.Supp.2d at 486-87, the Court stated:

RFRA provides, in relevant part, that no person that receives federal
funding shall impose a substantial burden on the religious exercise of a person
confined to prison even if the burden results from rule of general applicability,
unless  the government demonstrates that the imposition of the burden on that
person is in furtherance of a compelling governmental interest and is the least
restrictive means for furthering that interest.  42 U.S.C. § 2000bb-1(b).
Generally, the provisions of the [RFRA] "protects institutionalized persons who
are unable freely to attend to their religious needs and are therefore dependent
on the government's permission and accommodation for exercise of their
religion."  *Cutter*, 544 U.S. at 721, 125 S.Ct. 2113.

Under RFRA, the "government shall not substantially burden a person's exercise
of religion." [FN 9]. 42 U.S.C. § 2000bb-1(a). "The burden of proving
the existence of a substantial interference with a religious exercise rests on the
religious adherent." [citations omitted].

FN9. "Exercise of religion" is defined by the [RFRA] as including  "any
exercise of religion, whether or not compelled by, or central to, a system of
religious belief."  42 U.S.C. § 2000cc-5.

16

The *Rogers* Court stated that the Third Circuit has held that a "substantial burden" "lies where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs."  696 F.Supp.2d at 487 (citations omitted).

The *Rogers* Court, 696 F.Supp.2d at 487, also stated:

> Once a plaintiff establishes a *prima facie* case, the burden shifts to the government to demonstrate that "application of the burden" to the plaintiff "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(b). [FN10] "When considering the government's burden, we owe due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Smith v. Kyler*, 295 Fed.Appx. 479, 484 (3d Cir.2008) *citing Cutter*, 544 U.S. at 722, 125 S.Ct. 2113.

(Footnote omitted).

Plaintiff states, in his Complaint, that he was repeatedly told by the Defendant chaplains that he was not sincere enough in the expression of his religious beliefs to merit receiving special Kosher meals, and furthermore that the prison officials have retaliated against him,  following Plaintiff's purchase of a non-Kosher, beef sausage, by imposing a more severe punishment for a first violation than other inmates received, *i.e.* by excluding him for one year from the opportunity to receive Kosher meals.  As discussed above, Plaintiff states that after his one-year punishment expired, Defendant chaplains re-tested him to see

17

if he would again be permitted to have Kosher meals and he was found not to meet  more

stringent requirements despite his prior BOP approval of receiving Kosher meals and,

despite the approval of Defendant chaplains for him to receive Passover food in April 2012

and to receive the weekly Sabbath diet. Plaintiff also alleges that the Defendant prison

chaplains attempted to call into question the sincerity of his beliefs by requiring that he meet

a higher threshold of knowledge about Judaism since he was in the SMU program during his

re-testing and before granting his request to receive Kosher meals.  To date, Plaintiff states

that he is still not approved to receive Kosher meals and that he is not being provided with

the required amount of wine and matza for the weekly Sabbath meal.

As the Third Circuit has previously noted, prison officials can certainly inquire into

the sincerity of an inmate's religious beliefs:

> "Prison officials are, of course, entitled both to make a judgment about the
> sincerity and religious nature of an inmate's belief when he or she asks for
> different treatment and to act in accordance with that judgment. If the request
> is not a constituent part of a larger pattern of religious observance on the part
> of the inmate, for example, the asserted religious basis for the request may be
> rejected as pretext.

*DeHart v. Horn,* 227 F.3d 47, 61n. 3 (3d Cir. 2000).

However, as Plaintiff correctly points out,"it matters not  whether the inmate's

religious belief is shared by ten or tens of millions.  All that matters is whether the inmate is

sincere in his or her own views." *Williams v. Bitner*, 359 F. Supp. 2d 370, 376 (M.D.  Pa.

2005) aff'd, 455 F.3d 186 (3d Cir. 2006).  Plaintiff stresses that the Court should not engage

in screening his religious preferences to determine whether his beliefs have a basis in

organized religion, *i.e.* his personal interpretation and belief that he can pray to God to bless

18

his non-Kosher food to make it Kosher.

Based on the allegations specifically attributed to the Chaplain Defendants, we find that Plaintiff has sufficiently stated the  personal involvement of Defendants Carney, Onua and Davis in allegedly depriving him of the opportunity to receive Kosher meals and proper Sabbath food and drink, to allow Plaintiff's RFRA and First Amendment claims to proceed against these Defendants. Plaintiff does have a well-recognized right to receive Kosher meals, and he states that he has a sincere religious belief that non-Kosher food items can be blessed by him to meet Kosher standards if and when he must take a self-imposed removal from the Kosher food program provided. There may indeed be compelling reasons for Defendant chaplains to deny Plaintiff's Kosher meal request even in spite of his alleged sincerely held beliefs, but we conclude at this stage of the case that Plaintiff has sufficiently alleged that Defendant chaplains have placed a substantial burden on the exercise of his religious beliefs by allegedly not allowing him to have Kosher meals, by not providing him with the required amount of Sabbath food and drink, and by allegedly imposing retaliatory and excessive exclusionary time from access to the Kosher diet on Plaintiff.[12]  *See Small v. Lehman*, 98 F. 3d 762, 767 (3d Cir. 1996).  Thus, we recommend that Plaintiff's claims under the First Amendment and under RFRA be allowed to proceed only as against

---

[12]We note that Plaintiff will be required to show that Defendants Carney, Onua and Davis placed a "substantial burden" on his ability to practice his religion by failing to provide him with the Kosher meal and the required amount of Sabbath food and drink. Only after Plaintiff has demonstrated a substantial burden on his religious exercise, will the burden of proof shift to Defendants to show a compelling governmental interest is being furthered by the least restrictive means.  *See Rogers*, 696 F.Supp.2d at 487-88(citations omitted).

Defendants Carney, Onua and Davis.

**VI. Recommendation.**

_____Based on the foregoing, it is respectfully recommended that Plaintiff's claims under

RFRA and under the First Amendment be allowed to proceed as against Defendants Carney,

Onua and Davis. It is also recommended that Defendants Bledsoe, Norwood and Kane be

dismissed from this case with prejudice  based on lack of personal involvement with

Plaintiff's claim. Further, it is recommended that Plaintiff's claims for damages against all

Defendants in their official capacities be dismissed with prejudice.   It is additionally

recommended that Plaintiff's request for declaratory relief seeking this Court to declare the

alleged past conduct of Defendants violated his constitutional rights (Doc. 1, p. 6,¶ A. 1.) be

dismissed from this case with prejudice.

Finally it is recommended that this case be remanded to the undersigned for further

proceedings only as against Defendants Carney, Onua and Davis.




_____          s/ Thomas M. Blewitt
                                     **THOMAS M. BLEWITT**
                                     **United States Magistrate Judge**



**Dated:  September 12, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT NJOS,                                  :        CIVIL ACTION NO. **12-1375**
                                             :
            Plaintiff                        :        (Judge Kosik)
                                             :
            v.                               :        (Magistrate Judge Blewitt)
                                             :
CARNEY, *et al.*,                            :
                                             :
            Defendants                       :

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **September 12, 2012.**

        Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis
> of that record.  The judge may also receive further evidence, recall
> witnesses or recommit the matter to the magistrate judge with
> instructions.

Failure to timely file objections to the foregoing Report and Recommendation may constitute a waiver of appellate rights.


_____   **s/ Thomas M. Blewitt**
                                    **THOMAS M. BLEWITT**
                                    **United States Magistrate Judge**

**Dated:  September 12, 2012**